IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| JEAN MATHIS, | ) | |
| | ) | |
| Plaintiff, | ) | CV-01-1470-ST |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| HOUSING AUTHORITY OF UMATILLA | ) | |
| COUNTY, a non-profit business entity, | ) | |
| | ) | |
| Defendants. | ) | |

STEWART, Magistrate Judge:

## **INTRODUCTION**

Plaintiff, Jean Mathis ("Mathis"), filed this action on October 3, 2001, alleging that her former

employer, the Housing Authority of Umatilla County ("the Housing Authority") owes her wages for

overtime hours.  Her claims include failure to pay final wages when due in violation of ORS 652.140[1]

(First Claim) and failure to pay overtime wages in violation of 29 USC § 207 ("FLSA")[2] and ORS

653.010, *et seq.*[3] (Second and Third Claims).

This court has original jurisdiction over the federal statutory claim under 28 USC § 1331 and

supplemental jurisdiction over the state law claims under 28 USC § 1367.  All parties have consented

to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73

and 28 USC § 636(c).

Plaintiff's Motion for Summary Judgment or Partial Summary Judgment (docket #9) is now

before the court.  For the reasons that follow, the motion is granted to the extent that:  (1) Mathis was

an employee within the meaning of the FLSA and ORS Chapter 653; (2) she is entitled to overtime pay

as provided in the collective bargaining agreement; and (3) she may recover one penalty under ORS

652.150 and liquidated damages under the FLSA, but prejudgment interest must be offset from the

liquidated damages and, if the violation is willful, recovery is limited to the greater of the penalty under

ORS 652.150 or 29 USC § 260.  Otherwise, the motion is denied.

///

---

[1] ORS 652.140 provides in relevant part that: "(1) Whenever . . . employment is terminated by mutual agreement, all wages earned and unpaid at the time of such discharge . . . shall become due and payable not later than the end of the first business day after the . . . termination. . . . (5) This section does not apply to employment for which a collective bargaining agreement otherwise provides for the payment of wages upon termination of employment."

[2] The FLSA provides that: "(1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

[3] ORS 653.055(1) provides that: "Any employer who pays an employee less than the wages to which the employee is entitled under ORS 653.010 to 653.261 is liable to the employee affected: (a) For the full amount of the wages, less any amount actually paid to the employee by the employer; and (b) For civil penalties provided in ORS 652.150."

2 - OPINION AND ORDER

///

## **LEGAL STANDARDS**

FRCP 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  The moving party must show an absence of an issue of material fact.  *Celotex Corp. v. Catrett*, 477 US 317, 323 (1986).  Once the moving party does so, the non-moving party must go beyond the pleadings and designate specific facts showing a genuine issue for trial.  *Id* at 324.  The court must "not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial."  *Balint v. Carson City*, 180 F3d 1047, 1054 (9th Cir 1999) (citation omitted).  A "'*scintilla* of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,'" does not present a genuine issue of material fact.  *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F2d 1539, 1542 (9th Cir), *cert denied*, 493 US 809 (1989) (emphasis in original) (citation omitted).

The substantive law governing a claim or defense determines whether a fact is material.  *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F2d 626, 631-32 (9th Cir 1987).  The court must view the inferences drawn from the facts "in the light most favorable to the nonmoving party."  *Id* at 631 (citation omitted).  Thus, reasonable doubts about the existence of a factual issue should be resolved against the moving party.  *Id* at 630-31.

## **FACTS**

Because Mathis is the moving party, this court will view the evidence in the light most favorable to the Housing Authority.  A review of the parties' facts, as well as other materials submitted by the parties, including affidavits, declarations, and deposition excerpts,[4] reveal the following facts.

## I.  The Housing Authority

During 2000 and 2001, the Housing Authority administered a Section 8 Housing Program ("Section 8"), Public Housing Program, and Rural Development Housing Program.  Deposition of Stanley E. Stradley ("Stradley Depo"), pp. 11-12.  Section 8 is a program of the United States Department of Housing and Urban Development ("HUD").  *Id* at 10-11, 28.

## II.  Section 8 Coordinator

On January 15, 2001, the Housing Authority posted a job opening announcement for a Section 8 Coordinator.  *Id* at Ex 1.  This announcement, drafted by the Housing Authority's Executive Director, Stanley Stradley ("Stradley"), describes the position as follows:

> SECTION 8 COORDINATOR.  Housing authority seeks individual to perform complex professional work administering the Housing Assistance Payment Program (Section 8) under the general direction of the executive director.  Responsibilities include limited supervision of a small staff.  Requirements: thorough knowledge of HUD policy concerning Section 8 of the U.S. Housing Act of 1937, as amended; thorough knowledge of new "choice" voucher policies; Welfare-to-Work voucher policies; the management policies and procedures of the authority concerning Section 8; and the ability to establish and maintain effective working relationships with subordinates, other officials, clients, and the general public.  Any combination of education and experience equivalent to graduation from a college or university of recognized standing, supplemented by considerable experience in the work of a housing or redevelopment authority in a position involving eligibility or program

---

[4] Citations to affidavits, declarations, and depositions are identified by the last name of the affiant, declarant, or deponent, and citations are to the paragraph(s) of the affidavit, declaration or page(s) of the deposition transcript.  All other citations are to the exhibit number of the parties' submissions.

> development, or considerable experience in the real estate field; some
> experience counseling and/or working with low- and moderate-income families.
> The ability to communicate both orally and in writing in Spanish is a plus.  Mail
> resumes before 3:00 p.m. on February 20, 2001, to:  Stan Stradley, Executive
> Director, The Housing Authority of the County of Umatilla, P.O. Box 107,
> Hermiston, Oregon 97838-0107.  Women and Minorities encouraged to
> apply.  Equal Opportunity Employer.

*Id*.

The prior Section 8 Coordinator was an employee, not an independent contractor.  *Id* at 19-20, 26.  When Mathis applied for this position, Stradley offered to hire her as an employee, but she chose to be an independent contractor at $14.50 per hour.[5]  *Id* at 18, 20-21; Mathis Aff, ¶ 5.  Mathis had previously worked as an independent contractor for the Housing Authority and other housing authorities.  Mathis Depo, p. 25; Stadley Depo, p. 29.

### III.  **Mathis as Section 8 Coordinator**

Mathis' overall objective as the Section 8 Coordinator was to oversee the transition of the program from another agency, "set up the procedures, train staff, and get it fully operational."  Stradley Depo, p. 21.  There was no understanding regarding how long she would serve in the position.  *Id*.  Both assumed that either party could terminate the relationship at any time.  *Id* at 22; Mathis Aff, ¶ 6.

Of the four Housing Authority staff in the Section 8 program working with Mathis, three were employees and one was an independent contractor.  Stradley Depo, pp. 23-24.  Stradley never discussed with Mathis the degree of supervision he had over her as Section 8 Coordinator.  *Id* at 27.  Mathis was not expected to adhere to any particular schedule, and Stradley did not provide her with any direction or interfere with her work.  *Id* at 30; Stradley Aff, ¶ 4.  However, Stradley did expect

---

[5]  As discussed below, the parties disagree as to whether Mathis chose to be an independent contractor.

5 - OPINION AND ORDER

Mathis to administer the program in a way that complied with the federal guidelines on Section 8

policies.  Stradley Depo, pp. 28-29.  Mathis could have hired her own employees and was aware that

there was no withholding from her paycheck.  *Id* at 29-30; Mathis Depo, p. 36.

The Housing Authority provided Mathis with an office and purchased her supplies and

equipment with which she worked.  Stradley Depo, p. 30.  Mathis was authorized to send letters

relating to the operation of the Section 8 program on Housing Authority letterhead.  *Id*.  It made no

difference to Stradley whether Mathis identified herself as an employee or independent contractor in her

correspondence.  *Id* at 31.

From February 23 through August 15, 2001, Mathis submitted "billing statements" almost

weekly, showing her daily number of hours, which the Housing Authority promptly paid.  Stradley Aff,

Ex A.  The billing statements use an address different from that of the Housing Authority.  *Id*.  Most

work-weeks exceeded 49 hours and included some holidays.  *Id*.  On June 22, 2001, Mathis advised

Stradley that she was "terminating [her] services . . . effective July 25, 2001."  *Id* at 46.  The individual

who replaced Mathis as the Section 8 Coordinator was hired as an employee.  Stradley Depo, p. 27.

## IV.  Collective Bargaining Agreement

From July 1, 1998, through July 1, 2001, the Housing Authority was a signatory to a collective

bargaining agreement ("CBA") with Teamsters Union Local No. 670.  Mathis Aff, Ex 3.  The CBA's

Union Recognition clause, Article 2, establishes the union as the "exclusive bargaining representative for

the office and maintenance employees of [the Housing Authority]."  *Id* at 4.  Also, Article 5, Section 2,

of the CBA provides that, "[a]ll work performed on or after the forty-ninth (49th) compensated hour in

the work week, or on a Sunday, shall be paid at the rate of two times (2x) the employee's basic hourly rate of pay." *Id* at 6.

## DISCUSSION

### I. Employee or Independent Contractor

Mathis first moves for summary judgment on all of her claims or, alternatively, for partial summary judgment on the issue of liability because Mathis is an employee. The Housing Authority responds that it cannot be held liable because Mathis was an independent contractor.

### A. Legal Standards

Congress enacted the FLSA to remedy "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well being of workers . . . ." 29 USC § 202(a). The Supreme Court has observed that "the FLSA was designed to give specific minimum protections to *individual* workers and to ensure that *each* employee covered by the Act would receive [a] fair day's pay for a fair day's work and should be protected from the evil of overwork as well as underpay." *Barrentine v. Arkansas-Best Freight Sys.*, 450 US 728, 739 (1981) (internal quotations and citation omitted) (emphasis in original).

The FLSA defines an "employee" as "any individual employed by an employer." 29 USC § 203(e)(1). This is "the broadest definition that has ever been included in any one act." *United States v. Rosenwasser*, 323 US 360, 363, n3 (1945) (internal quotations and citation omitted). Meanwhile, "employer" is defined to include "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 USC § 203(d). The FLSA "defines the verb 'employ' expansively to mean 'suffer or permit to work.'" *Nationwide Mut. Ins. Co. v. Darden*, 503 US 318,

7 - OPINION AND ORDER

326 (1992), quoting 29 USC §§ 203 (e), (g).  "[T]he words 'suffer' and 'permit' as used in the statute

mean with the knowledge of the employer."  *Forrester v. Roth's IGA Foodliner, Inc.*, 646 F2d 413,

414 (9th Cir 1981) (internal quotations and citation omitted).  The Supreme Court has emphasized that

the "striking breadth" of this latter definition "stretches the meaning of 'employee' to cover some parties

who might not qualify as such under a strict application of traditional agency law principles."

*Nationwide Mut. Ins. Co.*, 503 US at 326.

The FLSA is to be construed expansively in favor of coverage, recognizing that broad coverage

is essential to accomplish the goals of this remedial legislation.  *Tony & Susan Alamo Found. v.

Secretary of Labor*, 471 US 290, 296-97 (1985); *Hale v. State of Arizona*, 967 F2d 1356, 1362

(9th Cir 1992).  Importantly, "[n]either the common law concepts of 'employee' and 'independent

contractor' nor contractual provisions purporting to describe the relationship are determinative of

employment status."  *Nash v. Resources, Inc.*, 982 F Supp 1427, 1433 (D Or 1997), citing *Real v.

Driscoll*, 603 F2d 748, 754-55 (9th Cir 1979).  Accordingly, to determine employment status for the

remedial purposes of the FLSA, the "economic realities test" is the applicable standard.  *Real*, 603 F2d

at 754.  Consisting of a nonexhaustive list,[6]

> courts have identified a number of factors which may be useful in distinguishing
> employees from independent contractors for purposes of social legislation such
> as the FLSA.  Some of those factors are:
> 1) the degree of the alleged employer's right to control the manner in which the
> work is to be performed;

---

[6]  This district has applied a four factor test, which includes "whether the alleged employer 1) had the power to hire
and fire employees, 2) supervised and controlled employee work schedules or conditions of employment, 3) determined the rate
and method of payment, and 4) maintained employment records."  *Nash*, 982 F Supp at 1433, citing *Hale*, 967 F2d at 1364.  At
oral argument, both parties agreed that this court should blend the four and six part tests and consider every relevant factor.

2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;

3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers;

4) whether the service rendered requires a special skill;

5) the degree of permanence of the working relationship; and

6) whether the service rendered is an integral part of the alleged employer's business.

The presence of any individual factor is not dispositive of whether an employee/employer relationship exists. Such a determination depends "upon the circumstances of the whole activity."

*Id* at 754-55 (footnote omitted), quoting *Rutherford Food Corp. v. McComb*, 331 US 722, 730 (1947).

This district applies the same FLSA analysis under state law claims when determining whether an employment or independent contractor relationship exists. *Nash*, 982 F Supp at 1437.

### B. <u>Analysis</u>

#### 1. <u>Control</u>

The "right to control" does not require continuous monitoring of employees. Instead, control may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA, since such limitations on control "do[] not diminish the significance of its existence." *Donovan v. Janitorial Servs., Inc*., 672 F2d 528, 531 (5th Cir 1982). "Control is only significant when it shows an individual exerts such a control over a meaningful part of the business that she stands as a separate economic entity." *Usery v. Pilgrim Equip. Co., Inc.*, 527 F2d 1308, 1312-13 (5th Cir), *cert denied*, 429 US 826 (1976).

As evidence of the Housing Authority's right to control her work, Mathis points to the facts that she had a key to and worked at the Housing Authority's office, used its letterhead, and understood

9 - OPINION AND ORDER

the relationship to be terminable at-will.  Moreover, the job announcement specifies that the

Coordinator works "under the general direction of the executive director."  Stradley Depo, Ex 1.  The

job description that Stradley provided to Mathis also states that "the Authority reserves the right to

change, reassign, or combine job duties at any time and to assign the [Section 8 Coordinator] position

additional tasks from time to time."  Mathis Aff, ¶ 7.

The Housing Authority argues that other factors, such as her power to hire and fire, supervise

and control employee work schedules or conditions, her rate and method of payment, and the

employment records all point to an independent contractor relationship.  Mathis, indeed, did not keep

time cards and was not expected to adhere to any particular schedule or work a certain set number of

hours.  The Housing Authority did not track her hours, but accepted her periodic billing statements.

Moreover, the degree of control the Housing Authority had over her work was dictated primarily by

the federal government's Section 8 regulations.

However, these factors are not sufficient to show that the Housing Authority exerted such little

control that Mathis stood as a separate economic entity.  Although Mathis may have believed she was

an independent contractor and billed the Housing Authority accordingly, she was dependent on the

Housing Authority for her sole source of income, worked at the Housing Authority's office, and was

subject to the Executive Director's direction.  Thus, the degree of control tips toward an employee

relationship.

## 2.  **Opportunity for Profit or Loss**

Because she was paid at a fixed hourly rate, Mathis had no opportunity for profit or loss other

than by charging the Housing Authority for the number of hours she worked.  She made no capital

investment in her business and did not control the volume of the business, set prices, advertise, or

engage in other activities generally associated with an independent business.  *See, e.g., Baker v. Flint*

*Eng'g & Constr. Co.*, 137 F3d 1436, 1441 (10th Cir 1998) (holding that workers paid at fixed hourly

rate had no opportunity for profit or exposure to loss).  Accordingly, this factor weighs in favor of

finding an employee relationship.

### 3. **Investment**

Mathis made no investment in either equipment or materials required for her work.  Mathis Aff,

¶¶ 9, 11.  This factor likewise favors an employee relationship.

### 4. **Special Skill**

Purely technical skills are not viewed in isolation.  Instead, courts look to see how an

employee's skills are utilized:

> [T]he fact that workers are skilled is not itself indicative of independent
> contractor status.  A variety of skilled workers who do not exercise significant
> initiative in locating work opportunities have been held to be employees under
> the FLSA.  *See, e.g., Robicheaux v. Radcliff Material, Inc.*, 697 F2d 662,
> 666-67 (5th Cir 1983) (welders); *Walling v. Twyeffort, Inc.*, 158 F2d 944
> (2nd Cir), *cert denied*, 331 US 851 . . . (1947) (tailors); *Dunlop v. Imperial
> Tool and Manufacturing, Inc.*, 77 Lab Cas ¶ 33,304 (ND Tex1975)
> [available on WESTLAW, 1975 WL 1173] (tool and die maker); *cf.
> Donovan v. DialAmerica Marketing, Inc., supra*, 757 F2d at 1387 (where
> distributors in home research business exercised "business-like initiative," in
> recruiting new home researchers, skill factor weighed in favor of independent
> contractor status).  The nurses in the present case possess technical skills but
> nothing in the record reveals that they used these skills in any independent way.
> Rather, they depended entirely on referrals to find job assignments, and
> Superior Care in turn controlled the terms and conditions of the employment
> relationship.  As a matter of economic reality, the nurses' training does not
> weigh significantly in favor of independent contractor status.

*Brock v. Superior Care, Inc.*, 840 F2d 1054, 1060 (2nd Cir 1988).

11 - OPINION AND ORDER

Mathis did not use her skills in any independent way.  Instead, her work and client contacts took place at the Housing Authority during its normal business hours.  Thus, this factor weighs towards a finding of an employee relationship.

### 5.  Permanence

The Section 8 Coordinator position was for an indefinite duration and either party could terminate the relationship at any time.  These facts favor an employee relationship.

### 6.  Service Rendered

"Agents [who] do the same work as those explicitly hired employees . . . are an essential part of the [business'] operation."  *Donovan v. Sureway Cleaners*, 656 F2d 1368, 1372 (9th Cir 1981) (citation omitted).  Mathis administered one of three programs at the Housing Authority and was an integral part of the Housing Authority's business.  Her daily activities required her to work with housing inspectors and other Housing Authority employees.  The Housing Authority had one other independent contractor, but that position was part-time and for a limited purpose.  The others were recognized as employees, including Mathis' predecessor and successor.  Thus, the services that Mathis rendered point towards those of an employee.

### 7.  Mathis' Intent

The Housing Authority and Mathis dispute whether Mathis requested to be hired as an independent contractor instead of an employee.  According to Stradley, due to "some personal problems," it was Mathis' choice "to stay as an independent contractor" until "a later period in time . . . if she so desired to take that position."  Stradley Depo, pp. 20-21.  Meanwhile, Mathis counters that "there was no discussion regarding how long [she] would be employed."  Mathis Aff, ¶ 5.  Instead, she

sent billing statements to the Housing Authority for her hours "[b]ecause [she] was told that that's what they were going to do."  Mathis Depo, p. 36.  Mathis does, however, admit that she "worked for the Housing Authority in the capacity of an independent contractor" and "was aware of the union contract and the double-time pay provision at the time [she] worked for the Housing Authority."  Mathis Aff, ¶¶ 5, 16.

When viewing the facts in favor of the Housing Authority, as this court must do at this juncture, Mathis explicitly communicated her objective desire to work as an independent contractor.  Although Stradley anticipated hiring Mathis as an employee, he accommodated her request to be hired as an independent contractor.  This court finds it troubling that despite her own request to work as an independent contractor, Mathis now seeks to pursue a claim under the FLSA.[7]

However, it is well-settled that subjective intent "cannot override the economic realities . . . ."  *Real*, 603 F2d at 755, citing *Usery*, 527 at 1315 (holding that "broader economic realities are determinative"); *Brennan v. Partida*, 492 F2d 707, 709 (5th Cir 1974) (holding that it does not "matter that the parties had no intention of creating an employment relationship, for application of the FLSA does not turn on subjective intent").  In addition, case law from this and other jurisdictions agree that contractual intention is not a dispositive consideration in an FLSA analysis.  *See*, *e.g.*, *Baker*, 137 F3d at 1440 (finding that rig welders were employees of general contractor even though parties signed an agreement stating an intent to maintain an independent relationship); *Imars v. Contractors Mfg. Servs., Inc.*, 1998 WL 598778, *5 (6th Cir 1998) (reasoning that the FLSA does not consider

---

[7]  In response to this court's request for additional briefing on this issue, the Housing Authority was unable to locate any case discussing whether a plaintiff can successfully sue under the FLSA when her stated desire was to be hired as an independent contractor.

13 - OPINION AND ORDER

contractual intention in a situation where plaintiff chose to be an independent contractor); *Real*, 603 F2d at 755 (noting that "[e]conomic realities, not contractual labels, determine employment status for the remedial purposes of the FLSA"); *Brennan*, 492 F2d at 709 (holding that attendants at self-service laundromat were employees under the FLSA, notwithstanding facts that agreement of parties was not made to evade the FLSA and that the parties never intended to enter into an employer-employee relationship). Accordingly, the issue of Mathis' desire to be an independent contractor does not alter the economic reality that she was an employee of the Housing Authority.

## II.  Unpaid Overtime

Based on her status as an employee, Mathis next moves for summary judgment on her claim for double-time for hours worked in excess of 49 per week, as provided by the CBA, Article 5, Section 2. The Housing Authority argues that Mathis is not entitled to double-time because: (1) she was not a party to the CBA; (2) she does not bring a breach of contract claim; (3) she did not follow the grievance procedure; and (4) her position is not listed as one to which the CBA applies. For the reasons that follow, this court disagrees.

Article 2 of the CBA "recognizes the Union as [] the exclusive bargaining representative for the office and maintenance employees of . . . [the] Housing Authority, for the purpose of the negotiation of wages, fringe benefits, hours of work, working conditions and job descriptions." Mathis Aff, Ex 3, p. 4. Moreover, Article 3, Section 1, mandates as "a condition of employment that *all* members of the bargaining unit hired on or after . . . [July 1, 1998] shall on the 31st day following the beginning of such employment become and remain members in good standing in the bargaining representative . . . ." *Id* (emphasis added). Thus, if Mathis was an employee, she automatically became a member of the union

14 - OPINION AND ORDER

on her 31st day of employment and is covered by the CBA. Nothing in the record indicates that Mathis, as an employee, should be exempt from membership.

The Housing Authority's arguments that Mathis' position is not listed within the CBA and she never followed its detailed grievance procedure fail. The CBA covers both "office" and "maintenance" employees and specifically includes "Occupancy Coordinator." While Mathis' position is not expressly listed in the CBA, the record does indicate that the position of Section 8 Housing Coordinator is equivalent to an Occupancy Coordinator. Although Mathis did not follow any procedure, including the grievance procedure contained within the CBA, she could not do so because the Housing Authority erroneously classified her as an independent contractor. Had she been properly classified as an employee when hired, she could have complied with the CBA. The Housing Authority cannot hide behind Mathis' failure to comply with the CBA when it deprived her of that opportunity. Accordingly, Mathis is entitled to the benefit of the CBA, including double-time for all hours worked in excess of 49 per week.

## III. Willful Conduct

Mathis next requests that this court find that the Housing Authority's failure to pay her overtime was willful within the meaning of ORS 653.055 such that it must pay a penalty. Pursuant to ORS 653.055, failure to pay overtime mandates payment of a penalty as provided in ORS 652.150. She also requests a finding that the Housing Authority's failure to pay her at the time of her termination was willful within the meaning of ORS 652.150, also entitling her to a penalty.[8]

---

[8] Mathis does not seek summary judgment that the Housing Authority's failure to pay her overtime was a willful violation under the FLSA.

15 - OPINION AND ORDER

To act willfully under ORS 652.150, the employer had to know what it was doing, intending to do it while acting as a free agent. *Kling v. Exxon*, 74 Or App 399, 403, 703 P2d 1021, 1023 (1985). As discussed above, a genuine issue of material fact exists on whether Mathis requested to be an independent contractor. If the Housing Authority accommodated her desire to be an independent contractor, then the Housing Authority's conduct was not willful. Accordingly, Mathis' motion for summary judgment that the Housing Authority acted willfully under Oregon law is denied.

## IV.  Liquidated Damages and Penalties

Lastly, based on her status an employee of the Housing Authority, Mathis seeks summary judgment that she is entitled to recover two penalties plus liquidated damages. In particular, she seeks a penalty under ORS 652.150 for late payment of wages, a penalty under ORS 653.055 for failure to pay overtime wages, and liquidated damages for failure to pay overtime wages under the FLSA. The Housing Authority contends that to avoid a triple recovery, Mathis should recover only liquidated damages under the FLSA because all three penalties arise from one act, namely the failure to pay overtime wages.

This dispute involves two separate issues:  (1) whether Mathis may recover two penalties for violating two state statutes; and (2) regardless of how many penalties she may recover under Oregon law, whether she also may recover liquidated damages under the FLSA.

With respect to the first issue, Oregon law provides that "[w]here there are two separate statutory schemes and two separate remedies, each with its own purpose, an employer who violated both laws is liable for the penalties provided in each." *Hurger v. Hyatt Lake Resort, Inc.*, 170 Or App 320, 323, 13 P3d 123, 124 (2000), *rev denied*, 331 Or 583, 19 P3d 355 (2001). However, the

16 - OPINION AND ORDER

Housing Authority's failure to pay Mathis overtime wages does not necessarily expose it to liability for failing to pay that overtime to Mathis after her termination.

The two state statutes involved address two separate failures: (1) failing to pay wages owed at termination; and (2) failing to pay overtime. A failure to pay wages owed at termination violates ORS 652.140. If the employer willfully fails to pay wages as provided in ORS 652.140, then it is liable for the penalty as provided in ORS 652.150. Similarly, a failure to pay overtime violates ORS 653.261 for which ORS 653.055(1)(b) mandates payment of a penalty as provided in ORS 652.150. The Oregon Court of Appeals has rejected the argument that the payment of inadequate overtime and nonpayment of termination offenses are bundled into a single penalty provision:

> [T]he statutes refer to separate varieties of employer misconduct, each of which is based on a different set of facts. One kind of misconduct – failure to pay "time and a half" for overtime – is a violation of Oregon's minimum employment conditions law and can occur during employment. Had plaintiff never terminated her employment with defendant, she still would have a valid claim under ORS 653.261. The second kind of employer misconduct – failure to pay wages due and owing upon termination – addresses a different social evil, regulated by a different ORS chapter, which occurs after the employment relationship has ended. Thus, the two penalty provisions at issue remedy two distinct statutory violations that arise our of different factual contexts and accrue at different times.

*Cornier v. Tulacz*, 176 Or App 245, 249, 30 P3d 1210, 1212 (2001).

In *Cornier*, the court allowed the employee to recover a penalty both for unpaid overtime under ORS 653.055 and for failure to pay vacation wages after the employee's termination under ORS 652.140. However, *Cornier* acknowledged that if an employee presents "two claims for two penalties

based on the same employer misconduct, one of those claims would probably fail under *Hurger* . . . ." *Id,* 176 Or App at 250, 30 P3d at 1212.

In *Hurger,* former employees alleged that their employer did not pay wages until two weeks after the time allowed by ORS 652.140. When the wages were paid, however, they complied with the minimum wage requirements. The court disallowed recovery of both a penalty for violation of the minimum wage statute, ORS 653.055, and a penalty for late payment of wages after termination as required by ORS 652.140, explaining:

> When, as here, the employee's regular wage rate complies with the statutory minimum requirement, the minimum wage component is automatically subsumed within the wage rate on which the penalty under ORS 652.150 is computed for the violation of ORS 652.140 itself. To impose a separate penalty under ORS 652.150, under these circumstances, would constitute a second penalty based on an amount that has already been included in the penalty that the employee has recovered for the untimeliness of the final payment under ORS 652.140.

*Hurger,* 170 Or App at 326, 13 P3d at 126.

Although neither *Cornier* nor *Hurger* involve the precise situation involved in this case, their analysis limits Mathis to recovery of only one penalty under Oregon law for the same employer misconduct. The Housing Authority committed only one wrongful act, namely not paying Mathis overtime wages. A violation of the overtime statute does not automatically create a second violation of the statute requiring prompt payment of all wages due and owing at termination when an employee quits or is terminated.

Since Mathis may only recover one penalty under Oregon law, the next issue is whether she also can recover liquidated damages under the FLSA. The Housing Authority argues that recovery of

18 - OPINION AND ORDER

both a penalty under Oregon law for failure to pay overtime wages and liquidated damages under the

FLSA must be disallowed as a double recovery:

> [R]ecovery of penalties under both Oregon law and the FLSA for
> failure to pay a minimum wage is cumulative.  In *Allen v. WTD Indus.*,
> Case No. 99-249-RE (D Or Oct. 11, 2000), Judge Redden found that
> the plaintiffs could assert both a FLSA and state claim for overtime
> violations, but limited recovery to "whatever amount is greater under
> one statute or the other."  *Id*, slip op at 11.  Judge Redden reasoned
> that "[t]his prevents the imposition of multiple penalties on an employer
> for a single course of conduct."  *Id*.  The same reasoning should apply
> here.  While Pascoe may allege both an FLSA and a state claim for
> failure to pay a minimum wage, he may not recover penalties under
> both.  Accordingly, Pascoe should be granted summary judgment
> against Mentor Graphics for penalties *both* for violating ORS 652.140
> and for violating *either* the FLSA minimum wage provision *or* ORS
> 653.055, with the second penalty limited to whatever amount is greater
> under the FLSA or ORS 652.150 (the penalty provision for violating
> ORS 653.055).

*Pascoe v. Mentor Graphics Corp.*, 199 F Supp 2d 1034, 1063 (D Or 2001) (emphasis in original).

Mathis responds that *Allen* and *Pascoe* misconstrue the remedial provisions of the FLSA as

established by Ninth Circuit and Supreme Court precedent.  Mathis argues that when properly

construed, penalties under Oregon law do not duplicate liquidated damages under the FLSA because

they serve different purposes.

An employer who violates the FLSA is ordinarily liable both for unpaid wages and an additional

equal amount as liquidated damages.  29 USC § 216(b).  However, the court has the discretion to

award no liquidated damages or reduced liquidated damages "if the employer shows to the satisfaction

of the court that the act or omission giving rise to such action was in good faith and that he had

19 - OPINION AND ORDER

reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." 29 USC § 260.

Before the enactment of 29 USC § 260, the Supreme Court stated that the liquidated damages provision in the FLSA "is not penal in its nature but constitutes compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages." *Brooklyn Sav. Bank v. O'Neil*, 324 US 697, 707 (1945), citing *Overnight Motor Transp. Co. v. Missel*, 316 US 572 (1942). In addition, liquidated damages under the FLSA provide "compensation for delay in payment of sums due under the Act." *Brooklyn*, 324 US at 715. Therefore, if liquidated damages are awarded under the FLSA, then prejudgment interest must be offset from the liquidated damages to avoid a double recovery.

> To allow an employee to recover the basic statutory wage and liquidated damages, with interest, would have the effect of giving an employee double compensation for damages arising from delay in the payment of the basic minimum wages. . . . Allowance of interest on minimum wages and liquidated damages recoverable under [the FLSA] tends to produce the undesirable result of allowing interest on interest. . . . Congress by enumerating the sums recoverable in an action under [the FLSA] meant to preclude recovery of interest on minimum wages and liquidated damages.

*Id* at 715-16 (citations omitted); *see also Holtville Alfalfa Mills, Inc. v. Wyatt*, 230 F2d 398, 401 n2 (9th Cir 1955).

The Tenth Circuit concluded that *Brooklyn Sav. Bank* nonetheless remains binding after the enactment of 29 USC § 260 "at least when the court has no discretion to reduce or eliminate the liquidated damages award." *Doty v. Elias*, 733 F2d 720, 726 (10th Cir 1984). Hence, if a plaintiff is entitled to the full award of liquidated damages, the plaintiff cannot also recover prejudgment interest.

20 - OPINION AND ORDER

*See Ford v. Alfaro*, 785 F2d 835, 842 (9th Cir 1986) (holding that "in the absence of a liquidated damage award, pre-judgment interest is necessary to fully compensate employees for the losses they have suffered").

Although liquidated damages are not punitive in nature, the FLSA imposes a separate penalty for a willful violation in the form of an extension of the statute of limitations from two to three years. 29 USC § 255; *McLaughlin v. Richland Shoe Co.*, 486 US 128, 134-35 (1988).

In contrast, the penalty set forth in ORS 652.150 is "penal in character." In *Nordling v. Johnston*, 205 Or 315, 326, 283 P2d 994, 999 (1955), the Oregon Court of Appeals, in drawing a distinction between liquidated damages and penalties, rejected the argument that ORS 652.150 was a provision for liquidated damages. Instead, it found that the purpose of ORS 652.150 is "to spur an employer to the payment of wages when they are due. Compensation to the employee is merely incidental." *Id.*

Because penalties under Oregon law are not equivalent to prejudgment interest, as are liquidated damages under the FLSA, Mathis argues that she can recover both the penalty under ORS 652.150 and liquidated damages under the FLSA. Since they do not serve the same purpose, Mathis contends that one is not duplicative of the other.

After carefully reviewing the cases relied upon by Mathis, this court agrees that an award of the penalty under ORS 652.150 and an award of liquidated damages under the FLSA do not constitute a double recovery. Liquidated damages under the FLSA are the equivalent of prejudgment interest

under Oregon law,[9] not the equivalent of the penalty under ORS 652.150.  Just as a plaintiff may not recover overtime pay under both Oregon law and the FLSA, a plaintiff may not recover both liquidated damages under the FLSA, which are duplicative of prejudgment interest, and prejudgment interest under Oregon law.  With respect to the penalty under ORS 652.150 for a willful violation, the equivalent damages under the FLSA are additional wages due to the extended statute of limitations. Awarding Mathis the penalty under Oregon law and liquidated damages under the FLSA is no more a double recovery than awarding prejudgment interest and punitive damages.

This court acknowledges that this conclusion may be at odds with both *Pascoe* and *Allen*. However, in both *Pascoe* and *Allen*, the plaintiffs failed to draw the court's attention to differing purposes of the various forms of damages available under both Oregon law and the FLSA.  Given those differing purposes, the penalty under ORS 652.150 does not duplicate liquidated damages under the FLSA, but does duplicate the penalty under the FLSA for a willful violation.

Accordingly, Mathis' request for summary judgment on the issue of entitlement to both liquidated damages under the FLSA and penalties under Oregon law is granted in part. Although the

---

[9]    ORS 82.010 provides as follows:
      (1) The rate of interest for the following transactions, if the parties have not otherwise agreed to a rate of
      interest, is nine percent per annum and is payable on:
            (a) All moneys after they become due; but open accounts bear interest from the date of the last
            item thereof.
            (b) Money received to the use of another and retained beyond a reasonable time without the
            owner's express or implied consent.
            (c) Money due or to become due where there is a contract to pay interest and no rate specified.
      (2) Except as provided in this subsection, the rate of interest on judgments for the payment of money is nine
      percent per annum.

Housing Authority committed only a single act by not paying Mathis overtime pay, it may be liable for the following damages:

1. Unpaid overtime pay;

2. Unless the Housing Authority shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that it had reasonable grounds for believing that its act or omission was not a violation of the FLSA, liquidated damages under the FLSA;

3. Prejudgment interest under either the FLSA or Oregon law, whichever is greater, less the amount of any liquidated damages awarded under the FLSA;

4. If the Housing Authority's violation was willful, the penalty set forth in ORS 652.150 or 29 USC § 260, whichever is greater.

## CONCLUSION

In short, this court finds that Mathis was an employee within the context of the FLSA and ORS Chapter 653 and, as an employee, is entitled to the benefit of the CBA.  However, genuine issues of material fact exist on whether the Housing Authority's conduct was willful.  Lastly, Mathis may recover one penalty under ORS 652.150 and liquidated damages under the FLSA, but prejudgment interest must be offset from the liquidated damages and, if the violation is willful, recovery is limited to the greater of the penalty under ORS 652.150 or 29 USC § 260.

## ORDER

For the reasons stated above, Mathis' Motion for Partial Summary Judgment (docket #9) is GRANTED as follows:

23 - OPINION AND ORDER

1.  Mathis was an employee, not an independent contractor, within the meaning of the FLSA and ORS 653;

2.  Mathis is entitled to payment of overtime at the rate of two times her regular rate of pay for all hours worked in excess of 49 during a working week pursuant to the terms of the CBA in effect at the time of her employment; and

3.  Mathis may recover one penalty under ORS 652.150 and liquidated damages under the FLSA, but prejudgment interest must be offset from the liquidated damages and, if the violation is willful, recovery is limited to the greater of the penalty under ORS 652.150 or 29 USC § 260.

Otherwise, the motion is DENIED.

DATED this 19th day of September, 2002.

/s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge

24 - OPINION AND ORDER